IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BMO HARRIS BANK N.A., a national banking association,

    *Plaintiff*,

v.

SUPERIOR TRUCKING, INC. and MIHAI MAMALIGA,

    *Defendants*.

CIVIL ACTION
NO. 20-2362

**PAPPERT, J.**                                                                                                                                        February 25, 2021

## <u>MEMORANDUM</u>

      BMO Harris Bank sued Superior Trucking, Inc. and Mihai Mamaliga alleging breach of contract and breach of guaranty stemming from several defaults on loans BMO Harris provided. Neither Defendant has entered an appearance or responded to the complaint. As a result, BMO Harris requested and received a default under Rule 55(a) from the Clerk of Court. Now it moves for default judgment against both Defendants under Rule 55(b). For the reasons that follow, the Court grants the Motion.

I

      In April of 2017, Superior Trucking borrowed $52,300 from BMO Harris to purchase a Freightliner truck. (Compl., Exh. A, ECF No. 1-1). Superior Trucking agreed to repay the loan plus predetermined interest for a total of $65,354.10. (*Id.*) In November of 2017, Superior Trucking borrowed an additional $126,000 from BMO Harris to purchase two more Freightliners. (*Id.*, Exh. B.) Superior Trucking agreed to repay a total of $159,553.44 on that loan. (*Id.*) In November of 2018, Superior

Trucking borrowed another $93,492.33 from BMO Harris for a fourth Freightliner and agreed to repay a total of $114, 496.80. (*Id.*, Exh. C.) A few days later, Superior Trucking entered into a final loan agreement with BMO Harris, borrowing $92,126.42 for another Freightliner and agreeing to pay back $112,705.44. (*Id.*, Exh. D.) Mamaliga served as guarantor for Superior Trucking, guaranteeing its full and timely performance under its loan agreements with BMO Harris. (*Id.*, Exh. E.)

Beginning on June 1, 2019, Superior Trucking stopped making payments on the loans. (Compl. ¶¶ 22–23, ECF No. 1.) Failure to make a payment constitutes default under each loan agreement. *See, e.g.*, (*id.*, Exh. A ¶ 5.1(a)). Mamaliga has failed to furnish payment on behalf of Superior Trucking, so he is also in default under the guaranty agreements. (Compl. ¶ 24.) BMO Harris accelerated the loan balances and declared the entire amount of each loan due pursuant to the agreements. (*Id.* at ¶ 26.) It provided Defendants written notice of this decision, demanded payment and sought possession of the collateral securing the agreements. (*Id.* at ¶¶27–28, 33.) Under the agreements, Superior Trucking must pay interest on all unpaid amounts plus late charges and other fees. (*Id.* at ¶¶ 29–30.) The agreements also provide that Superior Trucking must pay expenses for retaking, holding, preparing for sale and selling the collateral, as well as BMO Harris's attorneys' fees and costs incurred in enforcing its rights. (*Id.* at ¶¶ 31–32.)

BMO Harris claims in Count One of its complaint that Superior Trucking breached the loan agreements by failing to make payments. (*Id.* at ¶¶39–41.) It further contends that it suffered injury as a result of Superior Trucking's refusal to comply with its demand for accelerated payment of the full loan amounts. (*Id.* at ¶ 42–

44.) In Count Two, BMO Harris claims Mamaliga breached the guaranties by failing to satisfy Superior Trucking's obligations under the loan agreements. (*Id.* at ¶¶ 51–52.) BMO Harris seeks a judgment against Superior Trucking and Mamaliga in the amount due under the loan agreements and guaranty, plus additional interest, costs of collection and attorneys' fees and costs. (*Id.* at 8–9.)

BMO Harris tried serving Superior Trucking and Mamaliga using the addresses they provided on the loan agreements and guaranties. *See* (ECF No. 3–4). But as it turned out, those addresses were not associated with Defendants. (*Id.*) (Superior Trucking's address belonged to a UPS Store; Mamaliga's address led to an unrelated residence). So BMO Harris served Superior Trucking, a Washington corporation, by delivering the relevant documents to the Washington Office of the Secretary of State. (ECF No. 5.) With the Court's permission, it served Mamaliga by publication in the Philadelphia Daily News and Legal Intelligencer. (ECF Nos. 8, 9.) Neither Defendant entered an appearance or responded to the complaint, so in October of 2020 BMO Harris requested that the Clerk enter default against each Defendant for failing to answer or otherwise defend. (ECF No. 10.) After the entry of default, BMO Harris moved for default judgment against the Defendants on December 14, 2020. (ECF No. 11.) In that Motion, BMO Harris contends that "[f]acts sufficient to prove Defendants' liability to Plaintiff were included in Plaintiff's Complaint." (Mot. for Default Judgment 2, ECF No. 11.) To support its damages calculation, BMO Harris submitted sworn declarations, business records showing amounts owed under the loan agreements and records detailing attorneys' fees and costs. (Mot. for Def. J., Exh. A–B.)

II

"A consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."[1] *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citations and internal quotation marks omitted). The Court need not, however, accept the moving party's legal conclusions or allegations relating to the amount of damages. *Id.*; *see also DirecTV, Inc. v. Asher*, No. 03-cv-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing 10A Charles A. Wright, Arthur R. Miller and Mary Kay Kaneet, *Federal Practice and Procedure* § 2688, at 58–59, 63 (3d ed. 1998)). Consequently, before granting a default judgment the Court must first ascertain whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Asher*, 2006 WL 680533, at *1 (citing Wright, § 2688, at 63).

To state a claim for breach of contract under Pennsylvania law, a plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003). BMO Harris alleges that: (1) it entered into four loan agreements with Superior Trucking and describes the agreements' essential terms; (2) Superior Trucking breached the agreements by failing to make timely payments; and

---

[1] "[W]hen entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *D'Onofrio v. Il Mattino*, 430 F. Supp. 2d 431, 437 (E.D. Pa. 2006) (citations and internal quotation marks omitted). BMO Harris has alleged sufficient facts to demonstrate Defendants live and operate a business in Pennsylvania, establishing "certain minimum contacts with . . . [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316–17 (3d Cir. 2007) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). BMO Harris has accordingly alleged sufficient facts to demonstrate that the Court has personal jurisdiction over Defendants. The Court also has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332.

(3) specific damages resulting from the breach. Thus, it has alleged enough facts to show that Superior Trucking breached the loan agreements. "'An action seeking recovery under a guaranty is essentially a breach of contract action,' and the elements are the same." *Chong v. 7-Eleven, Inc.*, No. 18-cv-1542, 2020 WL 1069456, at *10 (E.D. Pa. Mar. 4, 2020) (quoting *U.S. Bank, N.A. v. Gorman*, No. 11-cv-612, 2012 WL 2919295, at *4 (W.D. Pa. June 7, 2012), *report and recommendation adopted*, 2012 WL 2916721 (W.D. Pa. July 14, 2012)). BMO Harris contends that Mamaliga executed written guaranties for Superior Trucking's loan agreements and has failed to fulfill his obligations therein, causing it monetary damages. Accordingly, BMO Harris has also stated enough facts to state a claim against Mamaliga for breach of guaranty.

### III

Given that "the unchallenged facts constitute [ ] legitimate cause[s] of action," the Court must now consider whether entering default judgment is appropriate. *Asher*, 2006 WL 680533, at *1 (citation omitted)). "Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

Each of these factors weighs in favor of granting default judgment. BMO Harris will be prejudiced if the Court denies its motion because it has "no other means of vindicating [its] claim[s] against" Defendants. *Asher*, 2006 WL 680533, *2 (granting default judgment where defendant "has not responded in any fashion," "has not

asserted any meritorious defense" and has not "offered any excusable reason for his default"). Further, "the court may presume that an absent defendant who has failed to answer has no meritorious defense, because [i]t is not the court's responsibility to research the law and construct the parties' arguments for them." *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 271–72 (E.D. Pa. 2014) (internal citations and quotation marks omitted). Finally, Defendants' failure to "engage[ ] in the litigation process" constitutes "culpable conduct with respect to the entry of a default judgment—indeed, for the Court to conclude otherwise would be to reward the recalcitrant or the oppositional and uncooperative." *E. Elec. Corp. of N.J. v. Shoemaker Constr. Co.*, 657 F. Supp. 2d 545, 554 (E.D. Pa. 2009).

IV

After granting the motion for default judgment, the Court must address the amount of damages to award. *See Rios v. Marv Loves 1*, No. 13-1619, 2015 WL 5161314, at *13 (E.D. Pa. Sept. 2, 2015). The Court may conduct a hearing to determine the amount of damages owed to the plaintiff, FED. R. CIV. P. 55(b)(2), or "may rely upon detailed affidavits submitted by the parties." *J & J Sports Prods., Inc. v. Puentenueva*, No. 14-3226, 2014 WL 7330477, at *2 n.1 (E.D. Pa. Dec. 22, 2014) (citation omitted). Here, the Court relies on BMO Harris's detailed affidavits and their attachments.

As of November 13, 2020, BMO Harris calculated damages of $288,644.38. (Mot. for Def. J., Exh. A ¶ 18.) That calculation includes an offset achieved by recovering a portion of collateral under the agreements and selling it for $56,834.21 in net proceeds.

6

(*Id.* at ¶ 23.) BMO Harris's evidence supports the following calculation of its actual damages:

$22,444.62 — principal due on Loan Agreement 1 (*Id.*, Schedule 1.)
$88,410.03 — principal due on Loan Agreement 2 (*Id.*)
$85,789.82 — principal due on Loan Agreement 3 (*Id.*)
$64,315.20 — principal due on Loan Agreement 4 (*Id.*)
<u>$27,684.71 — interest and fees due on Loan Agreements (*Id.*)</u>
$288,644.38 — total damages (as of November 13, 2020)

BMO Harris also seeks interest of $130.48 *per diem* based on a default interest rate of 18 percent. (Mot. for Def. J. 4) (citing *id.*, Exh. A, Schedule 1.) Since it has alleged sufficient facts and provided the Court with enough evidence to demonstrate the amount owed, the Court will enter judgment for BMO Harris and against Defendants in the amount of $288,644.38 plus $130.48 *per diem* beginning after November 13, 2020.

V

BMO Harris's counsel also requests attorneys' fees and costs, which it is entitled to under the loan agreements. *See, e.g.*, (Compl., Exh. A). The Court has discretion to "determine what constitutes a reasonable fee in accordance with the substantial Supreme Court precedent pertaining to the calculation of reasonable attorney's fees." *Graziano v. Harrison*, 950 F.2d 107, 114 (3d Cir. 1991). When using its "wide discretion" to determine whether fees are reasonable, the Court's inquiry "should not result in a second major litigation." *Fox v. Vice*, 536 U.S. 826, 837 (2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). The Court must, however, "'go line, by line, by line' through the billing records supporting the fee request." *Evans v. Port Auth. of New York & New Jersey*, 273 F.3d 346, 362 (3d Cir. 2001) (citations omitted).

7

An attorney for BMO Harris submitted to the Court his firm's invoices and detailed time records. (Mot. for Def. J., Exh. B, Schedule 1.) Three attorneys and four paralegals billed time on this case. (*Id.*, Exh. B ¶ 9.) Counsels' fees range from $255 to $450 per hour and each paralegal bills at $175 per hour. *See* (*id.*, Schedule 1). BMO Harris's legal fees and costs total $13,318.24. (*Id.*)

Each counsel's hourly rate is reasonable. *See Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001) ("The court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.") (internal quotation marks omitted). They have practiced for six, twelve and twenty years, respectively, and their rates reflect their experience. (*Id.*, Exh. B.) Plus, their rates are discounted specifically for BMO Harris, (*id.* at ¶ 9), and are lower than the rates charged by other attorneys practicing in this district with comparable experience according to the Community Legal Services, Inc.'s rate survey. *See Maldonado*, 256 F.3d at 187–88 ("The fee schedule established by Community Legal Services, Inc . . . has been approvingly cited by the Third Circuit as being well developed and has been found by [the Eastern District of Pennsylvania] to be a fair reflection of the prevailing market rates in Philadelphia.") (citations and internal quotation marks omitted). The same goes for the paralegals, who have eleven, eleven, fifteen and twenty years' experience, respectively. After reviewing counsel's invoices, the Court determines that the amount of time spent on the matter is reasonable in light of the nature of the suit and work performed. *See Fox*, 536 U.S. at 838 (stating that

"trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time").

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.